IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MYRA D. STONE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:11-CV-1459-BH |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties and the order of transfer dated September 20, 2011, this case has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed September 17, 2011 (doc. 16), and *Defendant's Motion for Summary Judgment*, filed October 19, 2011 (doc. 21).  Based on the relevant filings, evidence, and applicable law, Plaintiff's motion is **GRANTED**, Defendant's motion is **DENIED,** and the case is **REMANDED** for reconsideration.

## I.  BACKGROUND[1]

### A.  Procedural History

Myra D. Stone ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claims for disability benefits and supplemental security income benefits under Title II and XVI of the Social Security Act.  (R. at 5-7.)  Plaintiff applied for disability insurance and supplemental security income benefits in August 2005, alleging disability beginning July 15, 2005, due to chronic pancreatitis.  (R. at 25-26, 43, 80-81, 242.)  Her

---

[1]  The background information comes from the transcript of the administrative proceedings, which is designated as "R."

claims were denied initially and upon reconsideration.  (R. at 23-37, 229-41.)  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and personally appeared and testified at a hearing held on August 23, 3006.  (R. at 38, 248.)  On September 20, 2006, the ALJ issued a decision finding Plaintiff not disabled.  (R. at 248-51.)  Plaintiff appealed, and the Appeals Council granted her request for review.  (R. at 253-54.)  Because it was unable to locate the record in the case, the Appeals Council remanded the case to the ALJ to reconstruct the record and hold a new hearing.  (R. at 253.)  The Appeals Council also instructed the ALJ to review Plaintiff's earnings record because it appeared that she had returned to substantial gainful activity ("SGA") during the pendency of her disability claim.  (*Id.*)  Plaintiff personally appeared and testified at a new hearing held on November 20, 2009.  (R. at 371-82.)  On January 20, 2010, the ALJ issued a new decision finding Plaintiff not disabled.  (R. at 14-17.)  The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner.  (R. at 5-7.)  Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).  (*See* doc. 1.)

## B.  Factual History

### 1.  Age, Education, and Work Experience

Plaintiff was born in 1946.  (R. at 242.)  She has some college credits and has past relevant work experience as a legal secretary and paralegal.  (R. at 321, 378.)

### 2.  Medical Evidence

On July 11, 2005, Plaintiff visited the Emergency Department of the Doctor's Hospital complaining of yellow skin and dark urine.  (R. at 159.)  Roxanne Hubenack, M.D., ordered blood work and an ultrasound.  (R. at 169-72.)  Upon testing, James P. Blakely, M.D., found that

Plaintiff's bile ducts were dilated and possibly obstructed, her intrahepatic bile ducts and common bile duct were dilated, her gallbladder was distended, and she possibly had an obstruction in the head of the pancreas.  (R. at 169-70.)  Plaintiff was diagnosed with jaundice and a pancreatic mass.  (R. at 155.)

On August 13, 2005, Plaintiff underwent an endosonogram showing she had severe chronic pancreatitis.  (R. at 186-88.)  On September 12, 2005, she underwent a second endosonogram showing a mass in the "head of her pancreas."  (R. at 128, 133, 190-91.)  Karen R. Pinto, M.D., evaluated her lab tests and determined that the mass in her pancreas was not malignant.  (R. at 189.)

On November 11, 2005, Damien Mallat, M.D., treated a "biliary stricture" in Plaintiff's bile duct by inserting a stent into the stricture.  (R. at 184.)  Following the surgery, Dr. Mallat discharged her with orders to watch for pancreatitis, bleeding, perforation, and cholangitis.  (R. at 110.)

On December 28, 2005, Dr. Mallat surgically removed the stent and diagnosed Plaintiff with chronic pancreatitis with minimal duct disease.  (R. at 90.)  After the surgery, Dr. Mallat discharged Plaintiff with orders to watch for pancreatitis, bleeding, perforation, and cholangitis.  (R. at 90-91, 99.)

On March 28, 2008, Plaintiff was admitted to the Trinity Medical Center for abdominal pain.  (R. at 327-31.)  While there, Anis A. Ansari, M.D., diagnosed her with chronic pancreatitis, diabetes mellitus, dehydration, hypertension, reflux esophagitis, dilated common bile duct, questionable cholecystitis, "stricture for pancreatic duct," and diarrhea.  (*Id.*)  Dr. Ansari also noted that Plaintiff had a history of breast cancer, a lumpectomy, and osteoarthritis.  (R. at 331.)  Dr. Ansari treated Plaintiff for 3 days until her subacute pancreatitis was resolved, and then discharged her with instructions to follow up with her primary care physician and gastroenterologist for her "stricture

of the pancreatic duct." (R. at 327-28.)

On August 14, 2008, Plaintiff began receiving treatment from Vijay Sharma, M.D., at Diagnostic Partners of North Texas. (R. at 356-70.) Dr. Sharma diagnosed her with uncontrolled hypertension and diabetes and provided her with prescriptions for Metformin, Lisinopril, and Glyburide. (R. at 357-58, 370.)

On January 6, 2009, Dr. Sharma examined Plaintiff for complaints of "pressure on her chest" after stopping medication for 2 weeks, and diarrhea when taking her medication. (R. at 358.) During that exam, Plaintiff weighed 173 pounds and her blood pressure was listed as 110/70. (*Id.*) Dr. Sharma instructed her to return for a follow up examination in 1 to 2 weeks. (*Id.*) Plaintiff returned to Dr. Sharma's office on January 20, 2009, with no additional complaints. (R. at 356.) During her exam, Plaintiff weighed 171 pounds and her blood pressure was listed as 110/70. (*Id.*)

### 3. Hearing Testimony

On November 20, 2009, Plaintiff testified at a hearing before the ALJ. (R. at 371-82.) Plaintiff was represented by an attorney. (R. at 371.)

#### a. *Plaintiff's Testimony*

Plaintiff testified that she was 63 years old and was claiming an onset date of July 15, 2005, because that is when she learned of her pancreatitis. (R. at 374-75.) She testified that her sister took her to Baylor hospital because her skin turned yellow, and she was informed that she had pancreatitis that was affecting her liver. (*Id.*) In December 2005, she had a stent placed in her bile duct. (*Id.*) She had a total of three stents placed in her bile duct because the first two failed. (R. at 376.)

She testified that after being diagnosed with pancreatitis in July 2005, she began working as a paralegal in January 2006 with Synned, Inc., and worked there until October 15, 2008. (R. at

378.)  Her employers at Synned, Inc., knew that she had to go to the bathroom a lot and that she had to be excluded from some meetings.  (*Id*.)  She did not have a fixed schedule, could go in anytime, was never considered late, and was able to take days off when needed.  (*Id*.)  Synned also made other accommodations for her, which included providing her with an office right beside the bathroom and excusing her from meetings.  (R. at 379.)

Plaintiff testified that she last worked temporarily as a receptionist/legal assistant for a law firm named Jenkins and Babb between February 2009 and May 15, 2009.  (R. at 376-78.)  She had a lot of problems at the job because she had to go to the bathroom often.  (R. at 376.)  She was required to attend a lot of meetings in her position as a paralegal, and her pancreatitis prohibited her from being able to sit in a meeting for a long period of time.  (*Id*.)  She was allowed to leave her work station when she needed to, which was often, but she was not offered a full-time position in part because she could not sit in on meetings and could not "just sit up front."  (R. at 377.)  She testified that she had been looking for a permanent job "since then."  (R. at 378.)

Plaintiff noted that she had other impairments, including prior breast cancer, a life long non-functioning left kidney, and pre-diabetes.  (R. at 379-80.)  She did not know how much time she spent in the bathroom, but needed to go whenever she drank anything.  (R. at 377.)  She prepared herself for the hearing by not drinking or eating a lot and taking "two Imodium."  (*Id*.)  In addition to frequent urination, her conditions were also emotionally tolling because she worried about having to ask someone to let her go to the bathroom in the middle of a meeting and worried about having an "accident" because of a sudden urge to defecate.  (R. at 380-81.)  She said that she had previously had "accidents" and would be embarrassed if she had one while sitting in a meeting.  (R. at 380.)  She testified that she would also get dizzy, was constantly tired, and would get light-headed every

now and then.  (R. at 380-81.)  Someone told her that her dizziness was caused by the pre-diabetes. (R. at 380.)

## C. ALJ's Findings

The ALJ denied Plaintiff's application for benefits by written opinion issued on January 20, 2010.  (R. at 17.)  At step 1, the ALJ found that Plaintiff met the insured status requirements through May 15, 2009, and had engaged in SGA during the period from January 2006 through May 15, 2009. (R. at 16.)  He explained that her earnings record showed she had wages totaling $17,339 in 2006, $39,505.70 in 2007, and $38,018.22 in 2008.  (*Id.*)  He also explained that despite quitting work in 2006 after her diagnosis of pancreatitis, she subsequently went back to work in January 2006 and worked up until May 15, 2009.  (*Id.*)  The ALJ further found that there had been no continuous 12 month period during which Plaintiff had engaged in SGA.  (*Id.*)  At step 2, the ALJ found that Plaintiff's chronic pancreatitis impairment was not of sufficient duration to qualify as a severe impairment from July 15, 2005 through January 2006, and from May 2009 through the date of the decision.  (R. at 16-17.)  He concluded that Plaintiff was not disabled at any time through the date of the decision.  (R. at 17.)

## II.  ANALYSIS

## A.  Legal Standards

### 1.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g).  "Substantial evidence is that which is relevant and sufficient

for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).   In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.   A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program.  *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id*.  Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision.  *See id*. at 436 & n.1.

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64.  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status."

7

*Anthony*, 954 F.2d at 295. An "impairment which had its onset or became disabling after the special

earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler*,

770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential 5-step analysis to determine whether a claimant is

disabled:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found to be disabled.

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first 4 steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*,

67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first

4 steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her

burden under the first four steps, the burden shifts to the Commissioner at step 5 to show that there

is other gainful employment available in the national economy that the claimant is capable of

performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the

Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar

evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). After the Commissioner fulfills this burden, the burden shifts back to the claimant to show that he cannot perform the alternate work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and award her benefits. (*See* Pl. Br. at 12.) In the alternative, she asks the Court to remand the case back to the Commissioner for further consideration. (*See id.* at 12-13.) When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, 2009 WL 3029772, at * 10 (N.D. Tex. Sept. 22, 2009). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at * 11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### B. Issues for Review

Plaintiff raises the following issues for review:

1. The ALJ used an improper standard to determine that her conditions were not severe as a result of not meeting the duration requirement of 404.1505;

2. The ALJ did not follow the correct standard at step 2, as set forth in *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985), to determine whether or not her impairments are severe.

(*See* Pl. Br. at 1.)

**C. Improper Standard of Severity**[2]

Plaintiff argues that the ALJ applied an improper standard to determine the severity of her impairments at step 2 of the sequential evaluation process. (Pl. Br. at 5-12.) She argues that the ALJ improperly found that her conditions were not severe for failing to meet the duration requirement of 20 C.F.R. § 404.1505, and failed to apply the correct standard of severity set forth in *Stone*. (Pl. Br. at 9-12.)

Social security regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of these regulations would be inconsistent with the Social Security Act because they include fewer conditions than indicated by the statute. *Stone*, 752 F.2d at 1104-05. Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. The determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id*. at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Notwithstanding this presumption, the Court must look beyond the use of "magic

---

[2] While Plaintiff presents 2 issues for review, the issues are intertwined and are more appropriately address together.

words" and determine whether the ALJ applied the correct severity standard.  *Hampton v. Bowen*,

785 F.2d 1308, 1311 (5th Cir. 1986).  Unless the correct standard of severity is used, the claim must

be remanded to the Commissioner for reconsideration.  *Stone*, 752 F.2d at 1106.

Here, the ALJ made its disability determination at step 2 of the sequential evaluation process

when he found that from July 2005 through January 2006, and from May 2009 through the date of

his decision, "Plaintiff's chronic pancreatitis impairment was not of a sufficient duration to qualify

as a severe impairment."  (R. at 16.)  In making this determination, the ALJ relied on 20 C.F.R. §

404.1505, which defines disability as "the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  (R. at 16.)  "While duration does affect whether an impairment is considered disabling,

duration is not mentioned as a factor in the regulation's definition of severity.  Even the more

encompassing *Stone* standard adopted by the Fifth Circuit lacks any reference to a required

duration."  *Zavala v. Comm'r of Soc. Sec. Admin.*, 2012 WL 2680042, at *8 (N.D. Tex. July 6,

2012).  The Court is not convinced "that the duration requirement can be used to dispose of

severity."  *Id.*

Additionally, the ALJ did not cite to *Stone* when making his severity determination or

provide any indication that he applied the correct severity standard.[3]  (R. at 16-17.)  Instead, when

setting out the applicable law, the ALJ stated in his opinion that an "impairment or combination of

impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's

ability to perform basic work activities."  (R. at 15.)  This is the standard set forth in 20 C.F.R. §§

---

[3] Plaintiff incorrectly states that the ALJ cited to *Stone* and possibly confuses the ALJ's recent decision with his earlier decision.

11

404.1520(c) and 416.920(c) that *Stone* found to be inconsistent with the Social Security Act.  *See* 752 F.2d at 1104-05.  The ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work."  (R. at 15) (citing 20 C.F.R. §§ 401.1521 and 416.921; and Social Security Rulings (SSR) 85-28, 96-3p, and 96-4p).  Under *Stone*, however, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101.  Unlike the standard set out by the ALJ, *Stone* provides no allowance for a minimal interference with claimant's ability to work.  While the difference between the two statements appears slight, it is clear that the ALJ's construction is not an express statement of the *Stone* standard.  This difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion, leads the Court to conclude that the ALJ applied an incorrect standard of severity.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)).  However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error.  The Fifth Circuit left the lower courts no discretion to determine whether such an error is harmless.  Rather, the court mandated that "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added).  Because the ALJ applied an incorrect standard of severity at step 2, remand is required.

### III.  CONCLUSION

Plaintiff's motion for summary judgment is **GRANTED**, Defendant's motion for summary judgment is **DENIED**, and the case is **REMANDED** for reconsideration.

**SO ORDERED,** on this 3rd day of August, 2012.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13